IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jody Oseman-Dean, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 11 C 1935 |
| v. ) | |
| ) | Hon. Judge Suzanne B. Conlon |
| Illinois State Police, Marc Maton, ) | |
| Harold Nelson, Michael Cooke and Robert Haley, ) | |
| ) | |
| Defendants. ) | |

**Plaintiff's Memorandum in Opposition to Defendants' Partial Motion to Dismiss**

Plaintiff, Lt. Jody Oseman-Dean, has served 27 years with the Illinois State Police ("ISP"). See Docket # 1, ¶ 4. In 2009, she applied for the position of Commander in District 5. See id. ¶ 12. Despite being the most qualified applicant for the job, the ISP chose to promote a male, Michael Cooke, instead of Lt. Oseman-Dean. See id. ¶¶ 13-27. Lt. Oseman-Dean filed an internal complaint with the ISP's EEO office complaining that not only had the ISP discriminated against her, but that the ISP had also discriminated and retaliated against other female sworn officers. See id. ¶ 32. She repeated these same complaints in an EEOC charge and at other times. See id. ¶ 33. After she complained, the individual defendants Marc Maton, Michael Cooke and Robert Haley retaliated against her by either instructing her immediate supervisor that he could not give her higher performance review scores than she received the prior year, see id. ¶¶ 38-39; or actually lowering her scores in violation of an ISP regulation limiting which supervisors may play a role in a performance evaluation. See id. ¶¶ 40-43.

Lt. Oseman-Dean filed a six-count complaint alleging violation of her federal and state rights. See Docket # 1. Three of those counts are unchallenged: Lt. Oseman-Dean's

discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Counts I and III) and her Fourteenth Amendment Equal Protection claim brought pursuant to 42 U.S.C. § 1983 (Count V).  Defendant ISP, however, has moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the discrimination and retaliation claims brought under the Illinois Human Rights Act 775 ILCS 5/1-101 *et seq*., ("IHRA") (Counts II and IV).  The individual defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss her First Amendment claim brought pursuant to 42 U.S.C. § 1983 (Count VI).

As detailed below, this court should deny defendants' motion.  This court has jurisdiction over claims brought against the ISP under the IHRA, and Lt. Oseman-Dean has satisfied the pleading requirements to state a claim for a First Amendment violation.[1]

**I.      This Court Has Subject Matter Jurisdiction Over Lt. Oseman-Dean's IHRA Claims.**

Defendant ISP argues (at 4-5) that the Court lacks subject matter jurisdiction to hear claims against the state brought under the IHRA.  The ISP's sole argument (at 4-5) is that state employers are immune from suit in state or federal court under the IHRA pursuant to the Illinois State Lawsuit Immunity Act, which states:

> Except as provided in the Illinois Public Labor Relations Act, the Court of Claims Act, the State Officials and Employees Ethics Act, Section 1.5 of this Act, and, except as provided in and to the extent provided in the Clean Coal FutureGen for Illinois Act, the State of Illinois shall not be made a defendant or party in any court.

745 ILCS 5/1 (2010).  The ISP argues that because the State Lawsuit Immunity Act does not explicitly exempt claims brought under the IHRA, the general rule of sovereign immunity

---

[1] Plaintiff consents to the dismissal of Harold Nelson from Count VI but requests that it be without prejudice.

applies. Thus, the ISP maintains, Lt. Oseman-Dean may not sue the ISP in federal (or state) court.[2] Plaintiff disagrees based on the substantive content of the IHRA and its legislative history.

### A. Courts Must Also Examine the Substantive Statute at Issue to Determine if the State Waived its Sovereign Immunity

While plaintiff agrees that the State Lawsuit Immunity Act is the proper starting point of the jurisdiction analysis, it is neither the end nor the only part of the analysis. Illinois courts *have* permitted suits against the state even in the absence of an explicit waiver of sovereign immunity in the State Lawsuit Immunity Act. For example, in People v. Carter, 392 Ill. App. 3d 520, 912 N.E.2d 266 (2d Dist. 2009), the appellate court permitted a party to seek relief from the state in state court under the Illinois Sexually Dangerous Persons Act even though that statute is not explicitly listed as an exception to the general rule of sovereign immunity in the State Lawsuit Immunity Act. See Carter, 392 Ill. App. 3d at 525, 912 N.E.2d at 270. The Illinois appellate court had two reasons: first, the state initiated the court proceeding and thus sovereign immunity did not apply under a plain reading of the statute, which applies only if the state is "made" a defendant or a party. Carter, 392 Ill. App. 3d at 526, 912 N.E.2d at 271. Second, and of significance here, the Illinois appellate court ruled that a review of the underlying statute and subsequent amendments "indicates that the legislature did not intend for sovereign immunity to bar claims of this nature." Carter, 392 Ill. App. 3d at 526, 912 N.E.2d at 271. Thus, while

---

[2] Under the State Lawsuit Immunity Act, plaintiff would have the right to pursue her claims in the Illinois Court of Claims. Defendant ISP does not address this in its motion and instead seek dismissal with prejudice. Plaintiff maintains the plain terms of the IHRA and its legislative history demonstrate consent to suit. However, in the event this Court disagrees, plaintiff seeks dismissal without prejudice so that she may refile her claims in the Illinois Court of Claims.

plaintiff agrees that the first step in a sovereign immunity analysis is to examine the State Lawsuit Immunity Act, that is not the end of the analysis. The next step – and one that the ISP failed to take – is to examine the text, amendments and legislative history of the IHRA to determine if the state intended to assert sovereign immunity over IHRA claims. It did not.

B.  The IHRA Applies to State Employers and Subjects Them to Suit in Court

The IHRA prohibits discrimination and retaliation in employment and by its terms applies to state employers. Thus, the statutory definition of "employers" includes "[t]he State and any political subdivision, municipal corporation or other governmental unit or agency, without regard to the number of employees." 775 ILCS 5/2-101(B)(1)(c).

For most of its history, the IHRA was administered solely by a state agency, the Human Rights Commission, that employed state administrative law judges. During all those years, state employees routinely filed charges under the IHRA, litigated their cases at the Human Rights Commission and, if they were unhappy with the outcome, state agencies or employees appealed those decisions in Illinois Circuit Courts. See, e.g., Mitchell v. Dep't of Corr., 367 Ill. App. 3d 807, 856 N.E.2d 593 (1st Dist. 2006) (appeal of Human Rights Commission finding against the Illinois Department of Corrections filed in state court).

In 2007, the Illinois legislature amended the IHRA to provide plaintiffs with a private right of action. Beginning January 1, 2008, plaintiffs had the option to bring their IHRA claims in state or federal court. 775 ILCS 5/7A-102(C)(4). The legislative history of this amendment, Illinois House Bill 1509, is sparse but clear: the legislature's sole intent was to give litigants a

choice in where to adjudicate their IHRA claims. (See Exhibit A, Legislative History). Thus, State Senator Carol Ronen explained:

> All we're changing is the venue. When somebody goes to the Commission to hear their case, they're still hiring lawyers, so its still the same amount of resources and process. It's just giving them the option to opt out of the Commission and go to court. This isn't a radical notion. This puts us in line with federal law and also what thirty-eight other states do.

(See Exhibit A, Legislative History on House Bill 1509 dated May 22, 2007 at 112). The 2007 amendments to the IHRA simply enlarged the rights of plaintiffs by giving them the "option to opt out of the Commission and go to court." Id.

Nothing in the plain language of the statute nor its history suggests that the legislature intended to shrink the rights of state employees so that all employees – except those who happen to work for the state – could now have the right to bring suit in court. Given that the pre-2007 IHRA explicitly granted state employees the same rights as all other employees, one would expect quite different wording of the 2007 amendment and quite a different legislative history if the amendment were intended to suddenly create two classes of employees – state and non-state employees – with differing rights under the statute. Neither the plain language of the statute, nor the legislative history, indicates any such intent.

Against this backdrop, the ISP argues (at 4) that if the legislature wanted to consent to lawsuits under the IHRA, it would have explicitly done so in 2003 at the same time it amended the State Lawsuit Immunity Act to consent to suit under a number of federal anti-discrimination statutes.[3] That argument rests upon an illogical anachronism. In 2003, the IHRA did not provide

---

[3] Defendants mistakenly stated (at 4) the State Lawsuit Immunity Act was amended to explicitly consent to suit under the federal anti-discrimination statutes in 2000. Actually, it was amended in 2003 and the amendments took effect January 1, 2004.

for a private right of action in *any* court. And when the legislature amended the IHRA in 2007 to allow litigants to sue in court, that statute already treated state employees the same as non-state employees.

Indeed, the State Lawsuit Immunity Act was amended in response to a United States Supreme Court decision that concluded the federal government could not abrogate sovereign immunity in the text of those same anti-discrimination statutes. (See Exhibit B, Legislative History of House Bill 468 dated March 4, 2003). The legislature needed to amend the statute to make clear that the State of Illinois ensures that "people who happen to work for the State of Illinois instead of the Ford Motor Company or the City of Chicago have the same rights as those individuals to enforce these responsibilities that Congress has approved." (Ex. B at 37). This legislative history further undermines – rather than aids – the ISP's contention that the legislature did not intend to consent to suit in court under the IHRA.

The position that the ISP advocates here runs counter to the text of the IHRA and the legislative history of the 2007 amendments to that statute. Defendant's position is also at odds with the legislative history of the State Lawsuit Immunity Act, which demonstrated an affirmative legislative intent to provide state employees with the same rights enjoyed by private sector employees. Indeed, the ISP relies almost exclusively on two district court cases, Harris v. Ill. Dep't of Corr., No. 09 CV 3071, 2010 U.S. Dis. LEXIS 118922 (N.D. Ill. November 9, 2010) and Cook v. Ill. Dep't of Corr., No. 09-0133, 2009 U.S. Dis. LEXIS 73707 (S.D. Ill. August 20, 2009), that, respectfully, were incorrectly decided. In both Harris and Cook, the court limited its analysis to the State Lawsuit Immunity Act. Neither court considered the text of the IHRA or

the legislative history of the 2007 amendments. These cases are thus of limited precedential value.

Plaintiff respectfully requests that this court deny the ISP's motion to dismiss Counts II and IV under the plain language of the IHRA as well as the relevant legislative history. In the alternative, if the Court is inclined to adopt the ISP's arguments, plaintiff respectfully requests dismissal without prejudice so she may pursue her IHRA claims in the Illinois Court of Claims. See Harris v. Ill. Dep't of Corr., No. 09 CV 3071, 2010 U.S. Dis. LEXIS 118922 at *19 (dismissing IHRA claims without prejudice so that they could be refiled in the Court of Claims).

## II. Lt. Oseman-Dean Has Successfully Pled The Elements Of A First Amendment Claim Against The Individual Defendants In Count VI.

Lt. Oseman-Dean has met the standards to state a claim for First Amendment retaliation. A complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not plead a detailed set of facts, so long as the complaint supplies the defendants with "fair notice of what . . . the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accord Erickson v. Pardus, 551 U.S. 89, 93 (2007). A claim need only be "plausible on its face," Twombly, 550 U.S. at 570, which requires the court to consider whether the events alleged could have happened, not whether they did happen or likely happened, see Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010). In evaluating the sufficiency of the complaint, the court construes the complaint in the light most favorable to the nonmoving party, accepts well-pled facts as true, and draws all inferences in the plaintiff's favor. See, e.g., Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010).

Here, the allegations at issue satisfy the notice pleading requirements of the Federal Rules of Civil Procedure. Moreover, defendants improperly ask the court to make factual findings regarding the scope of Lt. Oseman-Dean's job duties and her motives. The court should deny their motion.

A First Amendment claim requires a three-step analysis in which the Court first determines whether the employee's speech was constitutionally protected; second, the plaintiff must establish that the speech was a substantial or motivating factor in the retaliatory action; and, third the defendant has an opportunity to establish that the same action would have been taken in the absence of the employee's protected speech. See, e.g., Chaklos v. Stevens, 560 F.3d 705, 711 (7th Cir. 2009). Defendants' sole argument (at 5-8) is that Lt. Oseman-Dean did not properly allege the first element: that she engaged in constitutionally protected speech.

Whether speech is constitutionally protected requires a two part analysis. The threshhold inquiry is whether the employee was speaking as a citizen. See Garcetti v. Ceballos, 547 U.S. 410, 421 (2006); see also Spiegla v. Hull, 481 F. 3d 961, 965 (7th Cir. 2007). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421. If the plaintiff was speaking as a citizen, the court must then determine whether that speech was on a matter of public concern, and if so, if the speaker's interest as a citizen in commenting on the matter of public concern outweighed the State's interest in promoting effective and efficient public service. See, e.g., Houskins v. Sheehan, 549 F.3d 480, 489 (7th Cir. 2008).

### A. Lt. Oseman-Dean Sufficiently Pled That She Was Speaking As A Citizen.

Lt. Oseman-Dean fulfilled her notice-pleading obligations to allege that she was speaking as a citizen. Lt. Oseman-Dean alleged not only that she filed a complaint with the ISP's EEO office regarding the discrimination that occurred in the promotion decision, see Docket #1, ¶ 31, but also that she told the ISP's EEO office that she believed the ISP discriminated and retaliated against other female sworn officers, see id. ¶ 32. Additionally, she repeated these statements regarding the ISP's discrimination and retaliation against herself and other female sworn officers in her EEOC charge and at other times. See id. ¶ 33.

Defendants argue (at 7) that Lt. Oseman-Dean's filing of the internal complaint was speech pursuant "to her duties as a police officer, therefore, she was not speaking as a citizen" as required by Garcetti. This argument is faulty as a matter of fact and law. It is faulty as a matter of fact because defendants ignore Lt. Oseman-Dean's allegations that she spoke about discrimination and retaliation not only by filing her internal complaint, but also at other times to the EEOC and to others. See Docket #1 ¶ 33. Thus, even if filing "internal complaints" were *de facto* presumed to be part of Lt. Oseman-Dean's job duties, it would not matter for purposes of this motion because her speech extended beyond those internal complaints.

Furthermore, as a matter of law, Garcetti specifically rejects the notion, advocated by defendants, that internal speech is presumptively part of an employee's job duties. As Garcetti states, "[t]he proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First

9

Amendment purposes." Garcetti, 547 U.S. at 424. Thus, it is premature to decide whether Lt. Oseman-Dean's internal complaint was part of her job duties. That issue requires an evidentiary record that does not exist at this stage of the proceedings.

### B. Lt. Oseman-Dean's Speech Was Of Public Concern.

Defendants' second argument – that the speech was not on an issue of public concern– fares no better. Although defendants correctly assert (at 7-8) that whether a statement rises to the level of public concern is a question of law, as all of the cases they cite reveal, it is an issue that requires analysis of a factual record. See Connick v. Myers, 461 U.S. 138 (1983) (decided after a trial); see Kokkinis v. Ivkovich, 185 F. 3d 840 (7th Cir. 1999) (decided on summary judgment); Hartman v. Board of Trustees, 4 F. 3d 465 (7th Cir. 1993) (summary judgment); Colburn v. Trustees of Indiana University, 973 F.2d 581 (7th Cir. 1992) (summary judgment); Calloway v. Hafeman, 832 F.2d 414 (7th Cir. 1987) (summary judgment). This is because whether a statement rises to the level of public concern requires a factual analysis of the content, form and context of the statement. See, e.g., Valentino v. Village of South Chicago Heights, 575 F.3d 664, 671 (7th Cir. 2009). Motive is considered part of the context analysis. Id. at 672.

For at least three reasons, the Court should reject as both premature and unsupported by the allegations the defendants' contention that Lt. Oseman-Dean's speech was not on a matter of public concern. First, the topic of Lt. Oseman-Dean's speech – sex discrimination and retaliation – is indisputably of public concern. Defendants themselves concede this (at 7). See also Marshall v. Allen, 984 F.2d 787, 795 (7th Cir. 1993) ("It cannot be disputed that in June 1988 the law was clearly established that the subject of this speech - sex discrimination in a public agency - was a topic of public interest.")

Second, any decision regarding the content, context and motive of Lt. Oseman-Dean's speech would require the Court to make presumptions of fact that are improper on a motion to dismiss. Defendants ask the court to make factual findings in their favor regarding Lt. Oseman-Dean's purported motives for her speech and to balance the various factors that go into determining whether speech is an issue of public concern. For example, defendants ask the Court (at 8) to assume Lt. Oseman-Dean's speech was motivated by "mixed motives" (without fully identifying these motives) and to find – based on no evidentiary record – that her speech "related predominately to her personal interest" of becoming District 5 commander. This request far exceeds the appropriate bounds of a motion to dismiss. Lt. Oseman-Dean stated a claim when she alleged speech as a citizen on an issue of public importance and that is all that she was required to do to survive a Rule 12(b)(6) motion to dismiss.

Finally, defendants' arguments are founded upon an incomplete portrait of the controlling law. Defendants rely (at 8) on Colburn, claiming that when the speaker's motives for speaking are a mixture of public and private concerns, her public concerns must be the overriding reason for the speech. In addition to the fact that an evidentiary record is necessary to attribute motive, defendants overstate the current law in this circuit. As the Seventh Circuit has recently stated, when balancing the elements of content, form and context, "content remains the most important factor in determining whether speech addresses a matter of public concern." Chaklos, 560 F.3d at 714. Here, the content of gender discrimination and retaliation in public employment is indisputably of public concern. As the Seventh Circuit has also recently, and repeatedly stated, "'we have emphasized that speech of public importance is only transformed into a matter of private concern when it is motivated solely by the speaker's personal interests.'" Valentino, 575

11

F.3d at 672, quoting Gazarkiewicz v. Town of Kingsford Heights, 359 F.3d 933, 941-42 (7th Cir. 2004) (emphasis added by Valentino court); see also Chaklos, 560 F.3d at 714 (reiterating the identical quotation from Gazarkiewicz). .

For all these reasons, plaintiffs respectfully request that this court should reject the defendants' contention that Lt. Oseman-Dean has not adequately pled speech on a matter of public concern and deny their motion to dismiss.

## Conclusion

For the reasons set forth herein, plaintiff Lt. Oseman-Dean respectfully requests that the court deny the ISP's motion to dismiss with prejudice Counts II and IV, and deny the motion by defendants Maton, Haley and Cooke to dismiss with prejudice Count VI. In the alternative, plaintiff requests that any dismissal of Counts II and IV be without prejudice to replead in the Court of Claims and that any dismissal of Count VI be without prejudice to replead. Plaintiff consents to the dismissal without prejudice of defendant Nelson from Count VI .

    Respectfully submitted,

    JODY OSEMAN-DEAN

    /s/ Johanna J. Raimond
    One of her attorneys

| | |
|---|---|
| Johanna J. Raimond | Ruth F. Masters |
| Jessica J. Fayerman | MastersLaw |
| Law Offices of Johanna J. Raimond, Ltd. | 7115 West North Avenue, # 296 |
| 431 S. Dearborn, Ste. 1002 | Oak Park, IL 60302 |
| Chicago, Illinois 60605 | Phone: (708) 445-8031 |
| Phone: (312) 235-6959 | |

## CERTIFICATE OF SERVICE

  The undersigned, an attorney, certifies that she served the foregoing on the parties below via the electronic filing system of the United States District Court for the Northern District of Illinois on June 20, 2011.

Sylvia RiosScott  
Andrew Velasquez  
Office of the Illinois Attorney General  
100 West Randolph Street, 13th Floor  
Chicago, IL 60601

              /s/  Johanna J. Raimond